COPY

1 | Shannon P. Cereghino (State Bar No. 221438)
2 | Ali Oromchian (State Bar No. 224265)
  | Christine G. Pedigo (State Bar No. 211425)
3 | FINKELSTEIN, THOMPSON & LOUGHRAN
  | 601 Montgomery Street, Suite 665
4 | San Francisco, CA 94111
  | Tel: (415) 398-8700
5 | Fax: (415) 398-8704
6 | Email: AO@FTLLAW.COM

7 | *Additional Counsel on Signature Page*

8 | *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IAN WALKER, individually and on behalf of all others similarly situated, | ) Case No.: 05 2882 ME |
| Plaintiff, | ) **COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT, THE CARTWRIGHT ACT, THE CALIFORNIA UNFAIR COMPETITION ACT, COMMON LAW MONOPOLIZATION, STATE ANTITRUST LAWS AND UNFAIR DECEPTIVE ACTS AND PRACTICES STATUES** |
| v. | ) |
| INTEL CORPORATION, a Delaware Corporation, and DOES 1-100, | ) |
| Defendant. | ) |
| | ) **CLASS ACTION** |
| | ) **DEMAND FOR JURY TRIAL** |

Ian Walker ("Plaintiff"), by his attorneys, individually and on behalf of all others similarly situated, alleges upon personal knowledge as to himself, and as to all other matters upon information and belief based on, *inter alia*, the investigation made by his attorneys, which included among other things, a review of publicly available information, of the complaint filed by Advanced Micro Devices, Inc. ("AMD") in the United States District Court, District of Delaware, styled *AMD v. Intel Corporation, et al.*, of the investigation and recommendation of the Japanese Fair Trade Commission ("JFTC") concerning the practices of Intel Corporation's Japanese subsidiary,[1]

---

[1] Japanese Fair Trade Commission, *The JFTC Rendered a Recommendation to Intel K.K.*, (March 8, 2005) <http://www.jftc.go.jp/e-page/pressreleases/index05.html> is attached as Exhibit A.

CLASS ACTION COMPLAINT

1   and of news reports of the investigation by the antitrust department of the European Union into

2   Intel Corporation's business practices in Europe, alleges as follows:

3   ## NATURE OF THE ACTION

4   1.   This action arises from the anticompetitive and monopolistic practices engaged in

5   by Defendant Intel Corporation ("Intel") in the trade or commerce of microprocessors.

6   Specifically, Intel intended to, did, and continues to prevent and destroy competition, acquire

7   and/or maintain monopoly power, and raise and/or maintain prices of x86 Microprocessors to

8   supra-competitive levels in the United States and worldwide by engaging in unlawful business

9   practices, including:

10          A.   Coercing strategic customers into exclusive or virtually exclusive

11               agreements to purchase Intel microprocessors;

12          B.   Threatening strategic customers with the loss of rebates, allowances and

13               market development funding if they did not limit or abandon purchases of

14               competitor products, such as the microprocessors developed by Advanced

15               Micro Devices, Inc.;

16          C.   Instituting a retroactive rebate program to induce customers to purchase

17               elevated levels of Intel microprocessors to the exclusion of competing

18               products manufactured by AMD or others; and

19          D.   Establishing and strictly enforcing quotas with retailers, requiring them to

20               purchase unnecessarily high numbers of Intel microprocessor based PC

21               platforms to the exclusion or near exclusion of competing platforms based

22               on AMD or other microprocessors.

23   2.   Since the mid-1970s, Defendant Intel has dominated and monopolized the x86

24   Microprocessor market worldwide.

25

26

27

28

CLASS ACTION COMPLAINT

3.     Since 1997, Intel's x86 Microprocessor market share of worldwide sales of PCs has exceeded 80%.[2] Intel engaged, and continues to engage, in a series of predatory acts designed to eliminate competition in, and prevent entry into the x86 Microprocessor market, exclude competitors from gaining significant market share, and maintain its monopoly position. Competitors such as AMD, offering technically superior products and/or lower prices, were and are not able to gain sufficient market penetration because of Intel's unlawful conduct. This behavior has enabled Intel to avoid any significant competition in the x86 Microprocessor market.

4.     Intel has used exclusionary practices to maintain its monopoly power, which has resulted in injury to consumers, primarily in the form of supra-competitive prices for microprocessors, which, in turn, raises the prices of PCs purchased by consumers to levels over what PCs would have been cost Intel's unlawful conduct, and secondarily in the form of reduced consumer choice.

5.     Plaintiff, on his own behalf and on behalf of the Class defined below, brings this action for civil damages and injunctive relief. Plaintiff demands a jury trial.

## DEFINITIONS

6.     The term "PC" refers to all computers for home or business use.

7.     The term "microprocessor" refers to the central processing unit of a PC.

8.     The term "x86 Microprocessor" refers to microprocessors that run the Microsoft Windows and Linux families of operating systems.

9.     The term "Intel Compatible PC" refers to a PC designed to function with Defendant Intel's x86 Microprocessors. Intel's x86 Microprocessor products include a family of devices that have been marketed and sold under the trade names 8086, 80186, 80286, 80386, Pentium, Pentium with MMX, Pentium Pro, Pentium II, III and IV, and Celeron.

10.     The term "AMD Compatible PC" refers to a PC designed to function with AMD's microprocessors. AMD's x86 Microprocessor products include a family of devices that have been

---

[2] The lone exception was in 2001 when Intel's market share was 78.7%. The following year it bounced back to approximately 83.6%.

CLASS ACTION COMPLAINT

1    marketed and sold under the trade names Athlon, Athlon 64, Athlon XP, Duron, Sempron, Turion,

2    and Opteron.

3         11.    The term "OEM" refers to original equipment manufacturers such as Dell, Hewlett-

4    Packard, International Business Machines, Sony, Fujitsu/Fujitsu Siemens, Toshiba, Acer and NEC.

5         12.    The term "Distributor(s)" refers to a company that markets or sells microprocessors.

6         13.    The term "Retailer(s)" refers to a company that buys PCs in large quantities from

7    OEMs or Distributors, and then sells individual PCs to consumers. Examples of Retailers include

8    Circuit City and Best Buy.

9    ## JURISDICTION AND VENUE

10        14.    This Complaint is filed, and these proceedings are instituted, pursuant to Section 16

11   of the Clayton Act, 15 U.S.C. § 26 , to obtain injunctive relief for violations of Sections 1 and 2 of

12   the Sherman Act, 15 U.S.C. §§ 1 and 2, to recover damages under state antitrust and consumer

13   protection laws, and to recover the costs of suit, including reasonable attorneys' fees, for the

14   injuries that Plaintiff and all others similarly situated sustained as a result of the Defendant's

15   violations of those laws.

16        15.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337. The

17   Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367. The

18   Court also has diversity jurisdiction over this class action pursuant to the Class Action Fairness Act

19   of 2005, which, *inter alia*, amends 28 U.S.C. § 1332 to add a new subsection (d) conferring federal

20   jurisdiction over class actions where, as here, any member of a class of plaintiffs is a citizen of a

21   State different from any defendant and the aggregated amount in controversy exceeds five million

22   dollars ($5,000,000.00), exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(2) and (6).

23        16.    Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because

24   Defendant Intel resides, transacts business, or is found within this District, and a substantial part of

25   the events giving rise to the claims originated in this District.

26        17.    The activities of Defendant Intel and its co-conspirators, as described herein, are

27   within the flow of, are intended to, and have a substantial effect on the interstate commerce of the

28   United States.

- 4 -

CLASS ACTION COMPLAINT

18.     Jurisdiction of this Court for the pendent claims is authorized by Fed. R. Civ. P. 18(a).

**PARTIES**

**A.     Plaintiff**

19.     Ian Walker is a resident of the County of San Francisco in the State of California. During the Class Period, Plaintiff purchased an Intel Compatible PC in California manufactured by Hewlett-Packard Company, for his own personal use and not for resale, and has been injured by Defendant's and its co-conspirators' conduct, as alleged herein.

**B.     Defendant**

20.     Intel Corporation is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 2200 Mission College Boulevard, Santa Clara, California 95052.

**C.     Unnamed Co-Conspirators**

21.     Certain PC OEMs, Distributors and Retailers not named as defendants in this Complaint have participated as co-conspirators in the alleged violations, and have performed acts and made statements in furtherance of the violations. Various other persons, firms, and corporations, the identities of which are presently unknowns have participated as co-conspirators with Defendant Intel in the violations alleged herein and have performed acts and made statements in furtherance thereof.

**CLASS ACTION ALLEGATIONS**

22.     Plaintiff brings this action on behalf of himself and all others similarly situated, pursuant to Fed. R. Civ. P. 23(b)(2) and (3). Plaintiff seeks to represent the following Class:

> **All persons, sole proprietorships, partnerships, corporations and other entities who purchased x86 Microprocessors or Intel Compatible PCs for their own use, and not for resale, at any time during the period of January 1, 1997 up to and including the date of trial. Excluded from the Class are the following: federal, state or local governmental entities; any judge, justice, or judicial officer presiding over this matter and the members of his or her immediate family; and Defendant and its co-conspirators, along with their respective parents, subsidiaries and/or affiliates. Also excluded from this Class are the legal representatives, heirs, successors and attorneys of any excluded person or entity and any person acting on behalf of any excluded person or entity.**

- 5 -

23.   Plaintiff also seeks to represent the following subclasses:

A.   **California subclass:**

**All persons, sole proprietorships, partnerships, corporations and other entities who purchased x86 Microprocessors or Intel Compatible PCS in California for their own use, and not for resale, at any time during the period of January 1, 1997 up to and including the date of trial.**

B.   **Separate subclasses for each other indirect purchaser state:**

**All persons, sole proprietorships, partnerships, corporations and other entities who purchased x86 Microprocessors or Intel Compatible PCs in each other state that allows recovery for indirect purchasers at the time of trial and who purchased for their own use, and not for resale, at any time during the period of January 1, 1997 up to and including the date of trial.**

24.   All Class members are hereinafter referred to as the "Class." Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amending the Complaint.

25.   This action has been brought and may properly be maintained as a Class action, pursuant to the provisions of the Rule 23 of the Federal Rules of Civil Procedure.

a.   Numerosity – Fed. R. Civ. P. Rule 23(a)(1): Members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains millions of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members is likely to be known by Defendant, and thus, such Class members may be notified of the pendency of this action by published notice or other alternative means.

b.   Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. Rule 23(a)(2): Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include:

(i)   Whether Defendant's anticompetitive and monopolistic

- 6 -

conduct violated the Sherman Act;

(ii)   Whether Defendant's anticompetitive and monopolistic conduct violated the Cartwright Act, California Unfair Competition Act, and/or the California common law of monopolization;

(iii)  Whether Defendant's anticompetitive and monopolistic conduct violated other state antitrust, unfair competition, or consumer protection laws that permit damage actions by indirect purchasers, including but not limited to: Alabama, Arizona, District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Ohio, Pennsylvania, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin;

(iv)   Whether Defendant possesses monopoly power in the relevant market;

(v)    Whether Defendant's conduct caused injury to the Class by increasing, maintaining or stabilizing the prices of x86 Microprocessors and of Intel Compatible PCs above competitive levels;

(vi)   Whether Defendant acquired or maintained monopoly power within the relevant market by unlawful and/or anticompetitive conduct;

(vii)  Whether Defendant's conduct caused injury to the business or property of Plaintiff and the members of the Class and, if so, the appropriate class wide measure of damages;

(viii) The operative time period during which Defendant engaged in conduct violative of the Sherman Act, the Cartwright Act,

CLASS ACTION COMPLAINT

1   California Unfair Competition Law, the common law of

2   monopolization and/or other indirect purchaser state statutes;

3   and

4   (ix)   Whether the Class is entitled to injunctive relief, and, if so,

5   the nature and extent thereof.

6   c.   <u>Typicality – Fed. R. Civ. P. Rule 23(a)(3)</u>:  Plaintiff's claims are

7   typical of the claims of the Class since Plaintiff purchased an Intel Compatible PC

8   during the Class Period.  Plaintiff and all members of the Class sustained monetary

9   injury arising out of Defendant's wrongful conduct.  There are no unique defenses

10   that may be asserted against Plaintiff, in his individual capacity.

11   d.   <u>Adequacy – Fed. R. Civ. P. Rule 23(a)(4)</u>:  Plaintiff is an adequate

12   representative of the Class because his interests do not conflict with the interests of

13   the Class that he seeks to represent; he has retained counsel competent and highly

14   experienced in complex class action litigation; and he intends to prosecute this

15   action vigorously.  The interests of the Class will be fairly and adequately protected

16   by Plaintiff and his counsel.

17   e.   <u>Superiority – Fed. R. Civ. P. Rule 23(b)(3)</u>:  This class action is

18   superior to other available means of fair and efficient adjudication of the claims of

19   Plaintiff and members of the Class.  The injury suffered by each individual Class

20   member is relatively small in comparison to the burden and expense of individual

21   prosecution of the complex and extensive litigation necessitated by Defendant's

22   conduct.  It would be virtually impossible for each member of the Class to obtain

23   effective redress for the unlawful conduct committed by Defendant through the

24   commencement of individual actions.  Even if the members of the Class could

25   afford such individual litigation, the court system could not.  Individualized

26   litigation presents a potential for inconsistent or contradictory judgments.

27   Individualized litigation increases the delay and expense to all parties, and to the

28   court system, presented by the complex legal and factual issues of the case.  By

- 8 -

contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

      f.    <u>Fed. R. Civ. P. Rule 23(b)(2)</u>:  Defendant's actions affected the Class as a whole, and Plaintiff seeks equitable relief for the benefit for the whole Class

26.  After determination of the predominate common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses.

27.  Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

28.  In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

29.  The claims in this case are also properly certifiable under the laws of the State of California, and of the other individual states that permit damage actions by indirect purchasers, including but not limited to the states identified above in paragraph 24(b)(iii).

<u>**RELEVANT MARKET**</u>

30.  The relevant product market is x86 Microprocessors and similarly compatible microprocessors.  The relevant geographic market is the world.

31.  At all material times, Intel has had worldwide monopoly power in the x86 Microprocessor market.  Sales of Intel microprocessors have accounted for approximately 80 percent of the total dollar sales of microprocessors worldwide.

<u>**FACTUAL BACKGROUND**</u>

**A.  Introduction**

32.  Intel designs, develops, manufactures, markets, and sells a variety of semiconductor products, including microprocessors.  Microprocessors are often described as the "brains" of a PC system, because they serve the essential functions of processing system data and controlling other devices integral to the system.

33.  Intel has illegally maintained a monopoly on the x86 Microprocessor market through a variety of exclusionary practices that foreclose effective competition and market

CLASS ACTION COMPLAINT

penetration by competitors such as AMD and others resulting in supra-competitive prices to the detriment of consumers such as the Plaintiff and the Class. Intel's exclusionary practices include direct payments to Distributors and Retailers in return for exclusive or near-exclusive supply arrangements; discriminatory rebates, discounts and subsidies to customers that foreclose competitors, including AMD, from gaining sufficient market share to compete effectively; and threats of economic retaliation against customers who deal with or support AMD.

34. Intel's exclusionary practices are targeted at both U.S. and foreign customers. The purpose and effect of the illegal conduct is to maintain Intel's monopoly market share in the x86 Microprocessor market by preventing competitors from making significant gains in sales, output and market share worldwide and thereby further entrenching the consumer dependence on Intel's x86 Microprocessors for the overwhelming majority of their processor needs.

35. Intel has obtained exclusive or near-exclusive supply arrangements with a number of large OEM PC manufacturers, including Dell, Sony, Toshiba, NEC, Fujitsu, Hitachi and Gateway. Pursuant to these arrangements, the OEMs purchase none or very little of their supply from AMD or other microprocessor manufacturers. Intel has secured these arrangements by means of direct payments, favorable discriminatory pricing, promotional support, and other financial incentives. In proceedings brought by the JFTC, Intel is not opposing the JFTC charges against it of misconduct with respect to Sony, Toshiba, NEC, Fujitsu and Hitachi.

36. Intel has abused its monopoly power and maintained it by means of unlawful and anticompetitive exclusionary business practices that force Distributors and Retailers to limit severely or cancel or abandon altogether beneficial relationships with Intel's competitors, including AMD. This causes the price of x86 Microprocessors and of Intel Compatible PCs to remain at supra-competitive levels damaging consumers, including Plaintiff and the Class.

**B.    Japanese Federal Trade Proceeding**

37. On March 8, 2005, the JFTC ruled that Intel had violated Japan's antimonopoly laws. The JFTC complaint alleged that Intel had violated these laws by offering discounts to five Japanese PC vendors - Hitachi Ltd., Sony Corp., Fujitsu Ltd., Toshiba Corp., and NEC Corp. - on

the condition that they either use Intel x86 Microprocessors exclusively, or limit the use of competitors' chips to 10%.

38.     Japanese regulators found that Intel violated Japanese antitrust laws beginning in 2002. In Japan, Intel's market share of x86 Microprocessors jumped from 78% in 2002 to 90% in 2004, while the shares of its competitors, AMD and Transmeta, dropped respectively from 18% in 2002 to 8% in 2004 and from 24% in 2002 to 11% in 2003. According to Japanese regulators, who believed Intel's sales methods to be unfair, the discount stipulations asserted by Intel on these OEMs severely limited their purchases from Intel's rivals. The JFTC discovered that in one case, Intel forced a PC maker to buy all of its semiconductors from it, under threat that otherwise it would lose the rebates that Intel had offered.

39.     Under the March 8, 2005 ruling, Intel can no longer require customers to use its chips exclusively or nearly exclusively across product cycles that typically span three or four months. Due to the ruling, OEMs will not be allowed to commit to exclusive use of Intel's microprocessors even of their own volition. Rather, Intel now must bid for each cycle. Intel is still able to utilize volume discounts as incentives to PC makers, but it cannot make the dissemination of a discount conditional on a promise of exclusivity by the purchaser. Although Intel accepted the Commission's recommendation, it did not purport to agree with the facts underlying the allegations.

### C.     Unlawful Practices Directed At Distributors

40.     Intel utilizes many of the same anticompetitive tactics with Distributors as it does with OEMs. For example, Intel entered into an exclusive deal with Synnex, which is one of the largest U.S. based Distributors. Intel offered other Distributors a smorgasbord of programs, including but not limited to marketing bonuses, increased rebates, credit programs, payment for freight charges and special inventory assistance such as credits to offset inventory costs, if they agreed to carry only Intel x86 Microprocessors.

41.     Intel also provides discounts and rebates to Distributors on the condition that they cease to do business with Intel's competitors, such as AMD, on both a worldwide or strategic sub-market basis. For example, upon information and belief, in December 2004, Ingram Micro, Intel's

1  biggest Distributor in China, unexpectedly ended discussions to distribute AMD microprocessors

2  because Intel provided loyalty rebates that were more lucrative than distributing AMD's

3  microprocessors.

4      42.    Similar to their dealings with OEMs, Intel offers retroactive rebates when a

5  Distributor reaches a prescribed buying quota.

6      43.    Intel's institution of exclusivity agreements, rebate programs and enforcing quotas

7  is anticompetitive and unlawful behavior which leads to supra-competitive prices on Intel

8  Compatible PCs, harming Plaintiff and the Class.

9      **E.**    **Unlawful Practices Directed At Retailers**

10      44.    Approximately 20% of all desktop and notebook PCs are purchased at retail stores.

11      45.    Intel and other manufacturers of microprocessors face a two-step process to get their

12  microprocessors on retail shelves:

13          i.    First, they must convince one or more OEMs to build

14            machines using their microprocessor at a suggested price

15            point; and

16          ii.    Second, they must convince the Retailer to stock and devote

17            shelf space to these machines.

18      46.    In exchange for providing shelf space, Retailers demand market development funds

19  ("MDF"). The MDF required to secure shelf space can run as high as $25 per box depending on

20  the PC price point and how urgently the microprocessor manufacturer wants the shelf space. MDF

21  also can consist of cooperative advertising support, but more frequently it is a marketing-related

22  opportunity that a microprocessor manufacturer must buy for thousands of dollars. For example, it

23  may include space in a Sunday circular, an in-store display or an internet training opportunity with

24  the chain's sales staff.

25      47.    Intel has historically enjoyed an advantage over its competitors at retail because of

26  many of the strategies described herein. Because of its influence and market power, Intel has

27  greater access to the OEMs' price points and has the ability to exert pressure to keep its

28  competitors out of the OEMs' product plans.

- 12 -

48.     To leverage those advantages, Intel has also made exclusive deals with many key Retailers. For example, until recently Office Depot declined to stock AMD-powered notebooks regardless of the amount of MDF AMD offered, citing its "premier" status with Intel that would be put at risk. In another example, when Intel learned that Fry's, Fujitsu's only Retailer in the United States, was very successfully marketing a Fujitsu AMD Compatible PC, it offered Fry's a large payment to remove the product from its shelves.

49.     As soon as AMD made some progress in gaining retail market share[3], Intel instituted an exclusionary rebate program. Under this program, Intel provides full MDF payments to Retailers, such as Best Buy and Circuit City, only if they agree to limit to 20% not just the shelf space devoted to AMD based products, but also the share of revenues they generate from selling AMD platforms. If AMD's share exceeds 20%, the offending Retailer's marketing support from Intel is cut by 33% *across all products*.

50.     More specifically, if less than 20% of Circuit City's notebook computer revenue derives from AMD Compatible PCs (30% for desktops), Intel has agreed to pay Circuit City $15 in MDF per Intel Compatible PC sold; but if the AMD percentage reaches or exceeds 20%, Circuit City's MDF subsidy is cut to $10. This creates a $5 per box "tax" on the Retailer for doing 20% or more of its dollar volume in AMD Compatible PCs; and this "tax" is applicable retroactively to all of the Intel Compatible PCs that the Retailer buys, back to the very first machine.

51.     As with OEMs and Distributors, Intel's agreements and relationships with Retailers are unlawfully exclusionary, have no pro-competitive justification, and are intended to maintain its monopoly to the detriment of Plaintiff and the Class.

## FRAUDULENT CONCEALMENT

52.     Throughout the conspiracy, Defendant and its unnamed co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff and the Class. Defendant and its unnamed co-conspirators conducted their conspiracy in secret, concealed the true

---

[3] With regard to the desktop market during the fourth quarter of 2004, AMD Compatible PCs captured between a 33%-38% share of Circuit City's sales, despite being limited to five of the 25 models (20%) on the Circuit City shelves. And with approximately 15% of the shelf space allotted to its products at Best Buy and CompUSA, AMD PCs accounted for roughly 30% and 22% of their sales, respectively.

CLASS ACTION COMPLAINT

nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendant and its unnamed co-conspirators were violating the antitrust laws as alleged herein until AMD's action against Intel was commenced in June 2005.

53.    As a result of the active concealment of the conspiracy by Defendant and its co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### FIRST CAUSE OF ACTION

**For Declaratory and Injunctive Relief Under Section 16 of The Clayton Act and 18 U.S.C. § 2201(a) For Violations of Section 1 of The Sherman Act (15 U.S.C. § 1) [The Sherman Act]**

54.    Plaintiff re-alleges and incorporates each and every allegation set forth in the paragraphs above.

55.    Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1997, and continuing through at least the filing of this Complaint, Defendant and its co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices in the x86 Microprocessor market.

56.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendant and its co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

        A.    To fix, raise, maintain and/or stabilize the price of x86 Microprocessors;

        B.    To limit competition and exclude AMD's microprocessors from the marketplace by:

            i.    severely restricting or abolishing relationships with AMD;

- 14 -

      ii.      entering into exclusive or near-exclusive contracts to the detriment of AMD; and

      iii.     entering into exclusionary rebate programs to the detriment of AMD.

57.     The combination and conspiracy alleged herein has had the following effects, among others:

    A.     Price competition in the x86 Microprocessor market has been restrained, suppressed, and/or eliminated;

    B.     Prices for x86 Microprocessors sold by Defendant have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels worldwide; and

    C.     Those who purchased x86 Microprocessors directly and indirectly from Defendant have been deprived of the benefits of free and open competition.

58.     Plaintiff has been injured and will continue to be injured in his business and property by paying more for x86 Microprocessors purchased indirectly from the Defendant and its co-conspirators than he would have paid in the absence of the combination and conspiracy, including paying more for personal computers and other products in which x86 Microprocessors a component as a result of higher prices paid for x86 Microprocessors by the OEMs.

59.     Plaintiff and the Class continue to be injured by Defendant's continuing conduct in violation of Section 1 of the Sherman Act.

60.     Plaintiff, on behalf of himself and the members of the Class, requests a declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 18 U.S.C. § 2201(a), that Defendant's aforementioned conduct violates Section 1 of the Sherman Act.

61.     Plaintiff, on behalf of himself and the members of the Class, also requests that the Court enjoin and restrain Defendant's wrongful conduct, alleged herein, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26.

## SECOND CAUSE OF ACTION

**For Declaratory and Injunctive Relief Under Section 16 of The Clayton Act and
18 U.S.C. § 2201(a) For Violations of Section 2 of The Sherman Act (15 U.S.C. § 2)
[The Sherman Act]**

62.     Plaintiff re-alleges and incorporates each and every allegation set forth in the paragraphs above.

63.     As described above, Defendant knowingly and willfully engaged in a course of unlawful and anticompetitive conduct to acquire and/or maintain its monopoly power in the x86 Microprocessor market.

64.     Through its wrongful course of conduct, Intel obtained, maintained, and continues to maintain, unlawful monopoly power, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

65.     Through such course of conduct, Intel exercised its monopoly power and caused anticompetitive effects, namely: suppression of the development of cheaper, faster, alternative microprocessors for personal and business PCs; and fixing, raising, maintaining and/or stabilizing the costs to the Plaintiff and the Class of purchasing Intel Compatible PCs.

66.     Plaintiff and the Class have been injured by Defendant's conduct in that they have paid supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs, and have been denied the benefit of free and open competition in the development of innovative microprocessor technology.

67.     Plaintiff and the Class continue to be injured by Defendant's continuing conduct in violation of Section 2 of the Sherman Act.

68.     Plaintiff, on behalf of himself and the members of the Class, requests a declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 18 U.S.C. § 2201(a), that Defendant's aforementioned conduct violates Section 2 of the Sherman Act.

69.     Plaintiff, on behalf of himself and the members of the Class, also requests that the Court enjoin and restrain Defendant's wrongful conduct, alleged herein, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26.     **THIRD CAUSE OF ACTION**

- 16 -

**Violation of Business & Professions Code § 16720 *et seq.***
**[The Cartwright Act]**

70.     Plaintiff re-alleges and incorporates each and every allegation set forth in the paragraphs above.

71.     Plaintiff and members of the Class are "persons" within the meaning of the Cartwright Act as defined in §16702.

72.     Intel possesses monopoly power in the market for x86 Microprocessors and Intel Compatible PCs.  Through the anticompetitive conduct described herein, Intel has successfully acquired, maintained, and increased its monopoly power in the x86 Microprocessor market.  Intel has acted with an intent to illegally acquire and/or maintain its monopoly power, and its anticompetitive conduct has enabled it do so, in violation of California Business and Professions Code § 16720.

73.     As a result of this violation, Intel has charged artificially inflated prices for its x86 Microprocessors which have increased the price of Intel Compatible PCs over what PCs would have been absent Intel's conduct and Plaintiff and the Class have been injured in their business and property as a result thereof in an amount that will be established at trial.

74.     The acts and practices engaged in by Defendant and its unnamed co-conspirators, as described herein, constitute combinations that have the purpose and effect of:

a.     Creating and carrying out restrictions in trade or commerce in the x86 Microprocessor market as defined herein; and/or

b.     Limiting competition in the manufacturing, making, sale, or purchase of microprocessors and AMD Compatible PCs.

75.     The aforesaid combination and conspiracy has had the following effects, among others:

a.     Plaintiff and the Class were injured in that they paid supracompetitive prices for x86 Microprocessors, as these costs were passed through and incorporated in the prices Plaintiff and the Class paid for OEM manufactured Intel Compatible PCs in California;

- 17 -

b.    Plaintiff and the Class were injured in that they were denied a competitive choice of microprocessors; and

c.    Plaintiff and the Class were, and are, denied the benefit of free and open competition.

76.    Plaintiff and the Class seek actual and statutory damages, including treble damages, and attorneys' fees and costs, as well as injunctive and equitable relief permitted by law, for their injuries caused by Intel.

## FOURTH CAUSE OF ACTION

### Violation of California Business & Professions Code §17200 *et seq.*
### [The Unfair Competition Act]

77.    Plaintiff re-alleges and incorporates each and every allegation set forth in the paragraphs above.

78.    Plaintiff asserts this Fourth Cause of Action individually, on behalf of the California subclass and on behalf of the general public of California, against Defendant for unfair business practices.

79.    Beginning on a date unknown to Plaintiff, Defendant committed, and continues to commit, acts of unfair competition, as defined by Section 17200 *et seq.*, California Business and Professions Code (the "Unfair Competition Law"), by engaging in the acts and practices specified in the paragraphs above.

80.    This Complaint is filed and these proceedings are instituted pursuant to Sections 17203 and 17204, California Business and Professions Code, to obtain restitution from the Defendant for its acts, alleged herein, which violate the Unfair Competition Law.

81.    Defendant's violations of the laws of this state and of common law by the practices complained of herein constitute unlawful business practices within the meaning of California Business and Professions Code section 17200 *et seq.* as Defendant's conduct violates the Cartwright Act.

82.    Defendant's conduct as alleged herein also constitutes an unfair business practice within the meaning of the Unfair Competition Law. Defendant's conduct is substantially injurious

- 18 -

to consumers and in violation of a legislatively-declared policy of this State. Consumers have paid, and continue to be forced to pay, supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs. This injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Defendant has not articulated any legitimate reason for the conduct. Further, consumers could not reasonably have avoided the injury resulting from the conduct.

83.     The conduct described herein also constitutes fraudulent or deceptive practices substantially affecting the conduct of trade or commerce in the State of California in violation of the Unfair Competition Law. Defendant's conduct was likely to and did deceive and mislead reasonable consumers such as the Plaintiff and the Class with respect to the pricing of x86 Microprocessors and of Intel Compatible PCs in California.

84.     The conduct alleged herein is an "ongoing business practice" within the meaning of Business & Professions Code section 17200 *et seq.* The unlawful, unfair, and deceptive business practices of Defendant, as described above, has injured, and presents a continuing threat of injury, to Plaintiff, the Class, and members of the general public, in that Defendant's conduct has restrained and continues to restrain competition, and has caused and continues to cause payment of supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs.

85.     As alleged in this Complaint, Defendant has been unjustly enriched as a result of its wrongful conduct. Plaintiff, the Class, and the general public are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendant as a result of such conduct, pursuant to California Business and Professions Code, sections 17203 and 17204.

### FIFTH CAUSE OF ACTION

### [Common Law Monopoly]

86.     Plaintiff re-alleges and incorporates each and every allegation set forth in the paragraphs above.

87.     Defendant willfully engaged, and continues to engage, in predatory, anticompetitive acts and practices that were and are intended to obtain and retain monopoly power in the x86 Microprocessor market.

88.    Intel's anticompetitive and exclusionary acts and practices allowed it to charge higher prices for its x86 Microprocessors which led to supra-competitive prices for Intel Compatible PCs.  By this conduct, Intel specifically intended to monopolize the x86 Microprocessor market, and willfully acquired and now possesses monopoly power as a result of such conduct.  Such conduct constitutes illegal monopolization and attempts to monopolize, in violation of California common law.

89.    Plaintiff and the Class have suffered injury to their business and property as a result of Defendant's monopoly power and anticompetitive conduct in that they have been, and continue to be, forced to purchase x86 Microprocessors and Intel Compatible PCs at supra-competitive prices.

90.    Plaintiff and the Class are entitled to bring this action and to recover herein compensatory damages, punitive damages, reasonable attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION

### [Violations of State Antitrust, and Fair Deceptive Acts and Practices Statutes]

91.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

92.    By reason of the foregoing, Defendant has violated Alabama Code §§ 8-10-1 *et seq.*

93.    By reason of the foregoing, Defendant has violated Alaska Stat. §§ 45.50.471 *et seq.*

94.    By reason of the foregoing, Defendant has violated Arizona Revised Stat. Code §§ 44-1401 *et seq.*

95.    By reason of the foregoing, Defendant has violated Arkansas Code §§ 4-88-101 *et seq.*

96.    By reason of the foregoing, Defendant has violated District of Columbia Code Ann. §§ 28-4503 *et seq.*, and §§ 28-3901 *et seq.*

97.    By reason of the foregoing, Defendant has violated Florida Stat. §§ 501.201 *et seq.*

98.    By reason of the foregoing, Defendant has violated Hawaii Rev. Stat. §§ 480 *et seq.*

99.    By reason of the foregoing, Defendant has violated Idaho Code §§ 48-601 *et seq.*

- 20 -

1       100.    By reason of the foregoing, Defendant has violated Iowa Code §§ 553.1 *et seq.*

2       101.    By reason of the foregoing, Defendant has violated Kansas Stat. Ann. §§ 50-101 *et*

3 *seq.*, and §§ 50-623 *et seq.*

4       102.    By reason of the foregoing, Defendant has violated Louisiana Rev. Stat. §§ 51:1401

5 *et seq.*

6       103.    By reason of the foregoing, Defendant has violated Maine Rev. Stat. Ann. 10, §

7 1101 *et seq.*, and 5 Maine Rev. Stat. §§ 207 *et seq.*

8       104.    By reason of the foregoing, Defendant has violated Michigan Comp. Laws. Ann §§

9 445.773 *et seq.*

10       105.    By reason of the foregoing, Defendant has violated Minnesota Stat. §§ 325D.52 *et*

11 *seq.*

12       106.    By reason of the foregoing, Defendant has violated Mississippi Code Ann. § 75.21.1

13 *et seq.*

14       107.    By reason of the foregoing, Defendant has violated Montana Code §§ 30-14-101 *et*

15 *seq.*

16       108.    By reason of the foregoing, Defendant has violated Nebraska Rev. Stat. §§ 59.801 *et*

17 *seq.*, and §§ 59-1601 *et seq.*

18       109.    By reason of the foregoing, Defendant has violated Nevada Rev. Stat. Ann. §§ 598A

19 *et seq.*

20       110.    By reason of the foregoing, Defendant has violated New Mexico Stat. Ann. §§ 57-1-

21 1 *et seq.*, and §§ 57-12-1 *et seq.*

22       111.    By reason of the foregoing, Defendant has violated New York Gen. Bus. Law §§

23 340, 349 *et seq.*

24       112.    By reason of the foregoing, Defendant has violated North Carolina Gen. Stat. §§ 75-

25 1 *et seq.*

26       113.    By reason of the foregoing, Defendant has violated North Dakota Cent. Code §§ 51-

27 08.1-01 *et seq.*

28

CLASS ACTION COMPLAINT

114.    By reason of the foregoing, Defendant has violated Ohio Rev. Code Ann. §§ 1331.01 *et seq.*

115.    By reason of the foregoing, Defendant has violated Oregon Rev. Stat. §§ 646.605 *et seq.*

116.    By reason of the foregoing, Defendant has violated Rhode Island Gen. Laws. §§ 6-13.1-1 *et seq.*

117.    By reason of the foregoing, Defendant has violated Pennsylvania common law.

118.    By reason of the foregoing, Defendant has violated South Carolina §§ 39-5-10 *et seq.*

119.    By reason of the foregoing, Defendant has violated South Dakota Codified Laws Ann. §§ 37-1 *et seq.*

120.    By reason of the foregoing, Defendant has violated Tennessee Code Ann. §§ 47-25-101 *et seq.*

121.    By reason of the foregoing, Defendant has violated Utah Code §§ 13-11-1 *et seq.*

122.    By reason of the foregoing, Defendant has violated Vermont Stat. Ann. 9 §§ 2453 *et seq.*, and 9 §§ 2451 *et seq.*

123.    By reason of the foregoing, Defendant has violated West Virginia Code §§ 47-18-1 *et seq.* and §§ 46A-6-101 *et seq.*

124.    By reason of the foregoing, Defendant has violated Wisconsin Stat. §§ 133.01 *et seq.*

125.    By reason of the foregoing, Defendant has violated Wyoming Stat. §§ 40-12-105 *et seq.*

126.    Class members in each of the states listed above paid supra-competitive prices for x86 Microprocessors and as a result have been injured because Defendant's wrongful and monopolistic conduct.

127.    The statute of limitations in the states listed above are tolled under the doctrine of equitable tolling since the AMD Complaint was not filed until June 27, 2005.

CLASS ACTION COMPLAINT

128.     Plaintiff and the Class are entitled to bring actions under the state statutes listed above and to recover compensatory damages, punitive damages, reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an Order setting forth the following:

1.     certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representative of the Class, and designating his counsel as counsel for the Class;

2.     declaring that Defendant's conduct constitutes a combination and conspiracy to restrain trade in violation of Section 1 of the Sherman Act;

3.     declaring that Defendant's conduct constitutes monopolization and/or attempted monopolization in violation of Section 2 of the Sherman Act;

4.     enjoining and restraining Defendant's continuing violations of Section 1 and 2 of the Sherman Act, pursuant to Section 16 of the Clayton Act;

5.     declaring that Defendant's conduct violates Section 16720 of the Cartwright Act;

6.     declaring that Defendant's conduct constitutes unfair business practices in violation of Section 17200 et seq. of the California Unfair Competition Act;

7.     declaring that Defendant's conduct violates California common law principles of monopolization;

8.     declaring that Defendant's conduct is in violation of antitrust and/or consumer protection or deceptive practice statutes in the indirect purchaser states;

9.     granting Plaintiff and the Class damages as permitted by law;

10.     granting Plaintiff and the Class their costs of prosecuting this action, together with interest and attorneys' fees, including such as allowed by statute, experts' fees and costs; and

11.     granting such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

- 23 -

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the members of the Class, hereby demands trial by jury

on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: July 14, 2005

Shannon P. Cereghino (S.B.N. 221438)
Ali Oromchian (S.B.N. 224265)
Christine G. Pedigo (S.B.N. 211425)
FINKELSTEIN, THOMPSON &
LOUGHRAN
601 Montgomery Street, Suite 665
San Francisco, CA 94111
Telephone:  (415) 398-8700
Facsimile:  (415) 398-8704

-and-

Douglas G. Thompson, Jr.
Richard M. Volin
Karen J. Marcus
FINKELSTEIN, THOMPSON &
LOUGHRAN
1050 30th Street, NW
Washington, DC 20007
Telephone:  (202) 337-8000
Facsimile:  (202) 337-8090

Counsel for Plaintiff

CLASS ACTION COMPLAINT



Shannon P. Cereghino (State Bar No. 221438)
Ali Oromchian (State Bar No. 224265)
Christine G. Pedigo (State Bar No. 211425)
FINKELSTEIN, THOMPSON & LOUGHRAN
601 Montgomery Street, Suite 665
San Francisco, CA 94111
Tel: (415) 398-8700
Fax: (415) 398-8704
Email: AO@FTLLAW.COM

*Additional Counsel on Signature Page*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

IAN WALKER, individually and on behalf of all others similarly situated,

               Plaintiff,

   v.

INTEL CORPORATION, a Delaware Corporation, and DOES 1-100,

               Defendant.

Case No. 05 2882

**CERTIFICATE OF SERVICE**

I, Valerie M. Foo, declare under penalty of perjury that the following is true and correct:

I am a citizen of the United States; am over the age of eighteen (18) years; am employed at the firm of FINKELSTEN, THOMPSON, & LOUGHRAN, 601 Montgomery Street, Suite 665, San Francisco, CA 94111, which has at least one member of the Bar of this Court; am not a party to the within action; and that I caused to be served a true copy of the following documents in the manner indicated below:

   (1)    **CLASS ACTION COMPLAINT**

   (2)    **CERTIFICATE OF SERVICE**

☒    **By Personal Service:** I placed a true copy of each document listed above in a sealed envelope to a messenger for personal delivery by 5:00 p.m. on this date

- 1 -

1   Executed on this 14TH Day of July, 2005 in San Francisco, CA.

2

3                                                    Valerie M. Foo

CLASS ACTION COMPLAINT

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | FOR COURT USE ONLY |
|---|---|
| FINKELSTEIN, THOMPSON & LOUGHRAN<br>601 MONTGOMERY STREET SUITE 665<br>SAN FRANCISCO, CA 94111<br>(415) 398-8700<br><br>ATTORNEY FOR (Name): | |

UNITED STATES DISTRICT COURT NORTHERN DIST. SAN FRANCISCO
NORTHERN DIST. SAN FRANCISCO
450 GOLDEN GATE AVE.
SAN FRANCISCO, CA 94102-3483

PLAINTIFF/PETITIONER:
WALKER

DEFENDANT/RESPONDENT:
INTEL CORPORATION

CASE NO:
C052882MEJ

### PROOF OF SERVICE OF SUMMONS

Ref. No. or File No:

Hearing date: _____   Time: _____   Dept./Div.: _____

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUMMONS IN A CIVIL CASE; COMPLAINT; CERTIFICATE OF SERVICE; RECEIT OF PAYMENT TO THE NORTHERN DISTRICT OF CALIFORNIA; ECF REGISTRATION INFORMATION HANDOUT; ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE; NOTICE OF ASSIGNMENT OF CASE TO A UNITED STATES MAGISTRATE JUDGE FOR TRIAL; DISPUTE RESOLUTION PROCEDURES PACKAGE

3. a. Party served: INTEL CORPORATION, A CORPORATION
   b. Person served: NANCI G. PALINTERE
   REGISTERED AGENT FOR SERVICE OF PROCESS

4. Address where the party was served:
   2625 WALSH BL.
   SANTA CLARA, CA.

5. Manner of service in compliance with Federal Rules of Civil Procedure
   b. on 08/31/05 at 2:45 PM by leaving copies with or in the presence of:
   KRISTINE SIEBERT-PARALEGAL
   (1)(business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person served. I informed him or her of the general nature of the papers.
   (4) by mailing the copies to the party served 3a, addressed as shown in item 4, by first-class mail, postage prepaid



**Janney & Janney**
attorney service, inc.

1313 W. 8TH STREET SUITE 310
LOS ANGELES, CA 90017
**(213) 628-6338**
www.janneyandjanney.com

Page 1 of 2

Judicial Council Form POS-010 Rule 982.9.(a)&(b) Rev July 1, 2004

**PROOF OF SERVICE OF SUMMONS**

| | |
|---|---|
| PLAINTIFF/PETITIONER:<br>WALKER<br>DEFENDANT/RESPONDENT:<br>INTEL CORPORATION | CASE NO:<br>C052882MEJ |

on 09/02/05 (2) at LOS ANGELES, CA
(5) A declaration of diligence is attached.

6.  Person who served papers
    a. V. TIM KEENE
    b. JANNEY & JANNEY ATTORNEY SVCS.
       1313 W. 8TH STREET SUITE 310
       LOS ANGELES, CA 90017
    c. (213) 628-6338

    d. The fee for service was $ 155.00
    e. I am: (3) Registered California
          process server
    (i)   (independent contractor)
    (ii)  Registration No.: # 749
    (iii) SANTA CLARA

7.  I declare under penalty of perjury under the laws of the United States
    of America that the foregoing is true and correct.

Date: 09/20/05
Judicial Council Form, Rule 982(a)(23) signature: *V. Tim Keene*
    1175699      psv1

**J J** **Janney & Janney**
attorney service, inc.

Judicial Council Form POS-010 Rule 982.9.(a)&(b) Rev July 1, 2004)

1313 W. 8TH STREET SUITE 310
LOS ANGELES, CA 90017
**(213) 628-6338**
www.janneyandjanney.com

Page 2 of 2

**PROOF OF SERVICE OF SUMMONS**